**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

AIMEE MARIE JENKINS-GRIFFIN,
Administrator of the Estate of CHRISTOPHER
GEORGE GRIFFIN, Deceased,

               Plaintiff,

   v.

3M COMPANY, et al.,

               Defendants.

Case No. 2:24-cv-600

**DEFENDANT GLOBE'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement................................................................................................. 1

Procedural History .................................................................................................... 2

Background ................................................................................................................ 2

Legal Standard .......................................................................................................... 5

Argument ................................................................................................................... 6

A.   Globe Was Acting Under A Federal Officer When It Provided Turnout Gear To
     The City of Norfolk. .......................................................................................... 7

     1.   By Manufacturing Turnout Gear Through Federal Funding and In
          Accordance with Federal Specifications, Globe Acted Under the Federal
          Government's "Subjection, Guidance, or Control." ........................................ 10

     2.   Globe's Manufacture of Turnout Gear for the City of Norfolk Assisted and
          Helped Carry Out Duties or Tasks to Fulfill a Federal Government Need ......... 11

B.   Globe Has A Colorable Federal Defense.......................................................... 13

C.   Globe Acted For And In Relation To Federal Authority When Providing Turnouts
     To The City of Norfolk ..................................................................................... 14

Conclusion ............................................................................................................... 16

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razman*,
    986 F.3d 168 (2d Cir. 2021)............................................................................................6

*Betzner v. Boeing Co.*,
    910 F.3d 1010 (7th Cir. 2018) ........................................................................................6

*Boyle v. United Technologies Corporation*,
    487 U.S. 500 (1988)......................................................................................................13

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*,
    996 F.3d 243 (4th Cir. 2021) ................................................................................ *passim*

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014)..........................................................................................................6

*Est. of Troilo by Troilo v. Rose Tree Place*,
    No. 22-CV-00097, 2023 WL 1864861 (E.D. Pa. Feb. 9, 2023), *aff'd*, No. 23-
    1435, 2024 WL 94098 (3d Cir. Jan. 9, 2024) ...............................................................12

*Garcia v. N.Y.C. Health & Hosps. Corp.*,
    2021 U.S. Dist. LEXIS 68575 (N.Y.S.D. Apr. 8, 2021)...............................................11

*Hurley v. CBS Corp.*,
    648 F. App'x 299 (4th Cir. 2016) ...................................................................................9

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008)............................................................................................6

*Jefferson Cnty., Ala. v. Acker*,
    527 U.S. 423 (1999).........................................................................................................6

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006).........................................................................................................6

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005).......................................................................................................16

*Papp v. Fore–Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016)............................................................................................9

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016) ..........................................................................................6

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ................................................................ *passim*

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
No. 22-10414, 2023 WL 2573914 (5th Cir. Mar. 20, 2023)........................................8

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
No. 3:20-CV-02112-X, 2022 WL 837495 (N.D. Tex. Mar. 21, 2022), *aff'd*,
No. 22-10414, 2023 WL 2573914 (5th Cir. Mar. 20, 2023)........................................7

*W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*,
23 F.4th 288 (4th Cir. 2022) ...............................................................................8

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)................................................................................ *passim*

*Willingham v. Morgan*,
395 U.S. 402 (1969)............................................................................................5

**Statutes**

28 U.S.C. § 1442(a)(1)............................................................................. *passim*

28 U.S.C. § 1446(a) ...........................................................................................6

28 U.S.C. § 1446(b)(1) .......................................................................................2

28 U.S.C. § 1447(c) ..........................................................................................16

Norfolk, VA, Ordinance 21, 192 (Oct. 31, 1961)..................................................4

Norfolk, VA, Ordinance 28,751 (Jan. 25, 1977) ...............................................4, 11

Norfolk, VA Resolution No. 1865 (June 14, 2022).................................................11

Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545 .....................14

**Other Authorities**

14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
3726 (4th ed. 2015)............................................................................................6

City of Norfolk Notice of Invitation for Bid (Jan. 12, 2016)......................................3

DHS, Notice of Funding Opportunity, Fiscal Year 2016 Assistance to Firefighters
Grant Program (2016), https://www.fema.gov/sites/default/files/2020-
07/FY16_AFG_NOFO_final_v3_09_01_2016.pdf.......................................3, 4, 9

iii

DHS, Notice of Funding Opportunity, Fiscal Year 2019 Assistance to Firefighters
Grant Program (2019), https://www.fema.gov/sites/ default/files/2020-
07/FY19AFGNOFINAL.pdf ...........................................................................................3, 4, 9

DHS, Notice of Funding Opportunity, Fiscal Year 2022 Assistance to Firefighters
Grant Program (2022),
https://www.fema.gov/sites/default/files/documents/fema_fy-22-afg-nofo.pdf........................4

U.S. Coast Guard, Hampton Roads Maritime Firefighting Contingency Plan
(August 2010), https://www.atlanticarea.uscg.mil/
Portals/7/CG%20011_1%20Hampton%20Roads%20Maritime%20Firefightin
g%20Contingency%20Plan_Newest%20Version_Redacted.pdf .......................................5, 11

iv

Defendant Globe Manufacturing Company, LLC ("Globe") respectfully submits this brief in opposition to Plaintiff's Motion to Remand (ECF No. 37).  Plaintiff's motion to remand must be denied because Globe has plausibly alleged that:  (i) Globe was acting under a federal officer in manufacturing federally-funded, federally-specified, built-to-order turnout gear for the benefit of the federal government; (ii) Globe has a colorable federal defense; and (iii) Globe's manufacture of turnout gear for Decedent's employer relates to an act under the color of federal office.

## PRELIMINARY STATEMENT

This case belongs in federal court pursuant to federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).  Plaintiff's Complaint alleges that Globe is a manufacturer of PFAS[1]-containing firefighter turnout gear,[2] which Decedent allegedly wore during his work as a firefighter for the City of Norfolk.  Although Plaintiff does not allege which brand of turnout gear the City of Norfolk procured for Decedent—or whether Decedent ever wore Globe turnout gear—upon information and belief, the City of Norfolk contracted with a Globe distributor to purchase built-to-order Globe turnout gear for its firefighters, including Decedent, in 2019.[3]  In manufacturing this turnout gear, Globe acted under a federal officer as a subcontractor, producing a built-to-order specialty product that was purchased using federal funding, in accordance with federal specifications, and for use, at least in part, to provide services to the federal government.  Globe therefore can plausibly allege that it acted under a federal officer, has a colorable federal defense, and the

---

[1] PFAS is per- and polyfluoroalkyl substances.  PFAS is a family of several thousand synthetic chemicals that are used in a multitude of products to provide water, heat, and oil resistance. Plaintiff defines PFAS as "chemicals consisting of a chain of carbon and fluorine atoms," which may include "'long-chain' PFAS made up of seven or more carbon atoms," and "'short-chain' PFAS made up of six or fewer carbon atoms." *See* Compl. ¶ 3.

[2] Turnout gear is protective clothing worn by firefighters to defend against heat, flames, steam burns, and other dangers.

[3] If Plaintiff does not allege that Decedent wore Globe turnout gear, then there is no good faith basis for this lawsuit and Globe must be dismissed.

charged conduct was carried out in relation to the asserted authority, which is all that is required to meet the low bar for removal under 28 U.S.C. § 1442(a)(1).

## PROCEDURAL HISTORY

Plaintiff filed this action in the Circuit Court for the City of Norfolk on September 29, 2023, against numerous defendants, including Globe. *See* Compl. Globe was served on September 16, 2024. This case was timely removed under 28 U.S.C. § 1446(b)(1) on October 7, 2024. On November 15, 2024, Plaintiff filed a Motion to Remand (ECF No. 37) and Brief in Support (ECF No. 38).

On October 11, 2024, Defendant 3M moved to transfer this action to the AFFF MDL in the District of South Carolina. *See* Mot. to Transfer, No. 24-cv-600, JPML ECF No. 2. On November 26, 2024, Plaintiff opposed transfer. *See* Resp. in Opp'n, No. 24-cv-600, JPML ECF No. 55. Briefing on the transfer motion has been completed. The Judicial Panel on Multi-District Litigation ("JPML") will consider the motion to transfer on January 30, 2025 and is expected to issue its transfer decision approximately 7-10 days after. *See* JPML ECF No. 58.

On November 20, 2024, Plaintiff moved to amend her complaint (ECF No. 39). The proposed amendment does not impact Globe's basis to assert federal officer jurisdiction.

## BACKGROUND

Globe builds turnout gear designed to protect firefighters from burn injuries and other hazards. As a cut-and-stitch manufacturer, Globe builds its turnout gear from technical fabrics sourced from specialty textile manufacturers. Some of these protective fabrics, as supplied to Globe, contain or historically have contained certain types of PFAS to achieve performance characteristics such as water-, oil-, or chemical-resistance. Globe does not manufacture PFAS or intentionally add PFAS to its products. Each garment of Globe turnout gear is built-to-order for the firefighter who will wear it. Globe primarily sells its gear through distributors, which in turn

2

often contract with government entities.

In many instances, government entities will issue bid documents to Globe's distributors, seeking Globe turnout gear by name, as was the case with the City of Norfolk in 2016. *See* City of Norfolk Notice of Invitation for Bid dated January 12, 2016, at pp. 8, 15, attached hereto as Exhibit A. The City of Norfolk sought NFPA 1971-compliant[4] turnout gear and required that the design of the turnout gear conform with all OSHA regulations and other federal laws. *See id.* at pp. 6, 25, 39. The City of Norfolk specifically requested turnout gear that contained PFAS. *Id.* at p. 7 (seeking to purchase a PTFE-containing[5] moisture barrier). Pursuant to that bid, Globe entered into a contract with the City of Norfolk in 2019 through a distributor.

In commissioning the Globe turnout gear, the City of Norfolk received funding through the Assistance to Firefighters Grant Program ("AFG Program"), which is administered by the Department of Homeland Security ("DHS") and the Federal Emergency Management Agency ("FEMA"). The AFG Program provides financial assistance to fire departments for the purchase of NFPA-1971 and OSHA compliant turnout gear in order to "support[] the goal to Strengthen National Preparedness and Resilience." DHS, Notice of Funding Opportunity, Fiscal Year 2019 Assistance to Firefighters Grant Program at 2 (2019), https://www.fema.gov/sites/default/files/2020-07/FY19AFGNOFINAL.pdf ("2019 NOFO"); *see also* DHS, Notice of Funding Opportunity, Fiscal Year 2016 Assistance to Firefighters Grant Program at 2 (2016), https://www.fema.gov/sites/default/files/2020-07/FY16_AFG_NOFO_final_v3_09_01_2016.pdf

---

[4] The National Fire Protection Association ("NFPA") is a nonprofit organization that promulgates safety codes and standards for fire, electrical, and building safety. NFPA 1971 establishes performance standards for turnout gear.

[5] Plaintiff does not specifically allege which of the thousands of PFAS chemical compounds allegedly were in Decedent's turnout gear. To the extent Plaintiff does not allege that exposure to PTFE in Globe turnout gear caused Decedent's injury, this case should be dismissed.

3

("2016 NOFO"). The federal government has acknowledged that, as of 2022, no NFPA-1971 compliant turnout gear was "fully PFAS free." *See* DHS, Notice of Funding Opportunity, Fiscal Year 2022 Assistance to Firefighters Grant Program at 52 (2022), https://www.fema.gov/sites/default/files/documents/fema_fy-22-afg-nofo.pdf ("2022 NOFO"). As relevant here, the City of Norfolk received funding through the AFG Program in 2019 for $1,330,745, which, upon information and belief, was used to contract with a Globe distributor, which, in turn, contracted with Globe, to make built-to-order turnout gear for Norfolk firefighters, including Decedent. Within the AFG Program guidelines, DHS/FEMA refers to grant recipients as "do[ing] business with the federal government," refers to the recipients of the end-funding of the AFG throughout the guidelines as "contractor[s]" and outlines numerous rules for dealing with "contractors or parties to subcontracts." *See* 2019 NOFO at 10, 59, 63-64; 2016 NOFO at 8, 48, 51-53.

Upon information and belief, the City of Norfolk acquired Globe's built-to-order turnout gear to equip its firefighters, including Decedent, to train for and provide firefighting services. Those services include fighting fires for the U.S. Navy and U.S. Coast Guard. The City of Norfolk operates under a Mutual Aid Agreement to provide firefighting services to the U.S. Navy. *See* Norfolk, Va., Ordinance 28,751 (Jan. 25, 1977).[6] The Agreement treats the federal government and the City of Norfolk as contracting parties. Under the Mutual Aid Agreement, the City of Norfolk provides "apparatus, *personnel*, *and equipment*..." to respond to fires on federal property. *Id.* (emphasis added). The City of Norfolk also participates in the Hampton Roads Maritime Firefighting Plan with the U.S. Navy and U.S. Coast Guard, which is a "joint

---

[6] The 1977 Ordinance "is an update of the original agreement between the two parties and substantially similar." The earlier Agreement, from 1961, refers to the City and federal government as "Contracting Parties." *See* Norfolk, Va., Ordinance 21,192 (Oct. 31, 1961).

effort of all federal, state, and local agencies responsible for handling marine fire emergencies in or around the Port of Virginia." *See* U.S. Coast Guard, Hampton Roads Maritime Firefighting Contingency Plan at 5 (August 2010), https://www.atlanticarea.uscg.mil/Portals/7/CG%20011_1%20Hampton%20Roads%20Maritime%20Firefighting%20Contingency%20Plan_Newest%20Version_Redacted.pdf. Plaintiff concedes that such agreements constitute a contractual relationship between the City of Norfolk and the U.S. Navy. *See* ECF No. 38, at 8 (acknowledging that "[t]he City of Norfolk contracted with the U.S. Navy").

## LEGAL STANDARD

Plaintiff devotes a third of her brief to discussion of standards applicable to removal generally but does not seriously contest the liberal policy in favor of federal officer removal. *See* ECF No. 38, at 2-5. 28 U.S.C. § 1442(a)(1) permits removal for federal officers, or individuals acting under the direction of federal officers, including subcontractors. The purpose of the statute is to provide a federal forum for defendants who are sued or prosecuted in state courts for actions taken under the color of federal office. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). This ensures that federal officers and persons acting under them can perform their duties without undue interference from state courts and provides a neutral forum for cases involving federal interests.

Federal officer jurisdiction is to be "liberally construed" in favor of removal, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), as it is intended that a defense of official federal immunity should be tried in federal court. *Willingham*, 395 U.S. at 407. "This policy should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Id.* As such, the "ordinary 'presumption against removal' does not apply" to federal officer jurisdiction. *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 251 (4th Cir. 2021) (citation omitted). The requirements that federal agents must meet to establish federal officer jurisdiction are "quite

5

low," are "interpreted broadly," and "impose[] few limitations." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136-38 (2d Cir. 2008). "[A] defendant's notice of removal need include only a plausible allegation" regarding the removal requirements. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see* 28 U.S.C. § 1446(a) (removal notice must include "a short and plain statement of the grounds for removal"); *Agyin v. Razman*, 986 F.3d 168, 174 (2d Cir. 2021). Moreover, "[t]he presumption against removal in ordinary diversity jurisdiction cases does not extend to the federal officer removal statute." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). A defendant removing based on federal officer removal is not required to present "an airtight case on the merits" in order to show the required connection between the suit and the official acts to state a federal officer removal defense. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999). Rather, a court must "credit the [removing defendant's] theory of the case." *Id.*

Additionally, the well-pleaded complaint rule does not apply to federal officer removal. *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006). Section 1442(a)(1) is "an exception to the well-pleaded complaint rule," *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016), which means that actions against federal agents "may be removed despite the nonfederal cast of the complaint" so long as "the defense depends on federal law." *Acker*, 527 U.S. at 431. Further, § 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency. *See* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3726 (4th ed. 2015).

### ARGUMENT

To assert federal officer removal, the defendant must plausibly allege three elements: (i) it is a federal officer or person acting under a federal officer; (ii) it has a colorable federal defense; and (iii) the charged conduct was carried out for or in relation to the asserted authority. *Sawyer*, 860 F.3d at 254. Plaintiff does not dispute that Globe has a colorable federal defense, instead

6

resting its arguments on the first and third prongs of the standard. *See* ECF No. 38, at 5. As explained in more detail below, Globe meets all three prongs.

**A.    Globe Was Acting Under a Federal Officer When It Provided Turnout Gear to the City of Norfolk.**

Globe was "acting under" a federal officer when the City of Norfolk commissioned Globe to build turnout gear for Decedent that was to be purchased with federal funding, in compliance with federal specifications, and for the benefit of the federal government.

Plaintiff agrees that the City of Norfolk contracted with the federal government but disputes that Globe did so too. *See* ECF 38, at 8. Direct contractual privity with the government is not necessary to satisfy the "acting under" requirement. The Fourth Circuit has held that "the absence of a *direct contractual relationship* with the federal government is *not* a bar to removing an action" under the federal officer removal statute because "federal contracts are often carried out, at least in part, through subcontractors." *Express Scripts*, 996 F.3d at 254; *see also Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 20-CV-02112, 2022 WL 837495, at *3 (N.D. Tex. Mar. 21, 2022), *aff'd*, No. 22-10414, 2023 WL 2573914 (5th Cir. Mar. 20, 2023) (explaining that the fact defendant was a subcontractor and "not technically in privity of contract with the government . . . [did] not change the analysis" because "the federal officer removal statute imposes no requirement that such a contract exist"). Accordingly, "courts must look beyond whether [defendants] are parties to a contract with [the government] to the nature of the relationship between them" in evaluating whether the "acting under" requirement has been met. *Express Scripts*, 996 F.3d at 254.

The Supreme Court has interpreted the phrase "acting under" to contemplate a relationship where, as here, the private entity acts under the government's "subjection, guidance, or control," in an effort "to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 151-52 (quoting *Webster's New International Dictionary* 2765 (2d ed. 1953)) (emphasis omitted);

*see also W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 299 (4th Cir. 2022); *Sawyer*, 860 F.3d at 255. This "acting under" requirement is "broad" and must be "liberally construed" in favor of the entity asserting federal jurisdiction, in this instance Globe. *Sawyer*, 860 F.3d at 255.

For example, in *Express Scripts*, the Fourth Circuit found that the defendants met the "acting under" requirement where defendants did not hold the contract with the Department of Defense to provide health care services to the Department's members but rather were subcontracted to do so. 996 F.3d at 252-54. Specifically, the Court found that defendants carried out the Department's duties in providing pharmacy services to its members and were subject to the federal government's guidance and control by administering these services pursuant to the federal contract's requirements, the Department's guidelines, and other applicable statutes and regulations. *Id.*; *see also Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *4 (5th Cir. Mar. 20, 2023) (affirming denial of motion to remand and finding subcontractor was "acting under" a federal officer because contract between government and contractor contemplated use of subcontractors, included requirements for subcontractor agreements, and specifically required subcontractors comply with all applicable Medicare laws, regulations, and instructions, thereby carrying out the delegated duties of the contractor while at all times being subject to the federal government's guidance and control). In providing such turnout gear through its distributor, Globe similarly served as a subcontractor to the City of Norfolk, a federal contractor.

Plaintiff does not appear to dispute that where, as here, "[an] entity contracts with the federal government to fulfill a federal government need," the "acting under" requirement is satisfied. *See* ECF 38 at 7 (emphasis omitted). Rightly so—"courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from

equipment that it manufactured for the government." *Sawyer*, 860 F.3d at 255; s*ee, e.g.*, *Hurley v. CBS Corp.*, 648 F. App'x 299, 303 (4th Cir. 2016) (per curiam) ("GE is a 'person acting under' a federal officer because it was acting under a valid government contract at all times relevant to the litigation" by producing and installing the alleged asbestos-containing equipment pursuant to contracts with the Navy); *Papp v. Fore–Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) ("Papp's allegations are directed at actions Boeing took while working under a federal contract to produce an item the government needed, to wit, a military aircraft, and that the government otherwise would have been forced to produce on its own."). Indeed, Plaintiff does not appear to dispute that "where [an] entity contracts with the federal government to fulfill a federal government need," the "acting under" requirement is satisfied. *See* ECF 38, at 7 (emphasis omitted).

The City of Norfolk contracted with the federal government in two fundamental ways as relevant here: (1) the City of Norfolk contracted with the U.S. Navy and the U.S. Coast Guard to provide firefighting services; and (2) the City of Norfolk "did business with the federal government" by acquiring turnout gear with and per the specifications of DHS/FEMA's AFG Program, 2019 NOFO at 10; 2016 NOFO at 8. The City of Norfolk acquired the turnout gear, at least in part, to fulfill its duties under its contracts with the U.S. Navy and U.S. Coast Guard to provide firefighting services.

Globe has plausibly alleged that (1) it acted under the federal government's "subjection, guidance, or control" by manufacturing built-to-order turnout gear pursuant to federal government specifications; (2) for the City of Norfolk "to assist, or to help carry out, the duties or tasks" of federal entities by providing firefighting services, including turnout gear, to the U.S. Navy and U.S. Coast Guard. *See Watson*, 551 U.S. at 151-52. As explained in greater detail below, that is sufficient to establish that Globe was acting under a federal officer.

**1. By Manufacturing Turnout Gear Through Federal Funding and In Accordance with Federal Specifications, Globe Acted Under the Federal Government's "Subjection, Guidance, or Control."**

First, the federal government conditions funding through the AFG Program on compliance with the terms of the program, including that manufacturers build the turnout gear in accordance with certain specifications and compliance with NFPA 1971. Plaintiff does not dispute that Globe manufactured the turnout gear at issue through this federal funding and in compliance with these federal specifications. ECF No. 38, at 9. While the Complaint fails to allege which brand of turnout gear Decedent wore at each point during his career (or at any point during his career), Globe, upon information and belief, manufactured a set of turnout gear for the City of Norfolk for Decedent in 2019. In commissioning that set of built-to-order turnout gear, the City of Norfolk required that Globe manufacture the turnout gear to be compliant with NFPA-1971, with a moisture barrier that contained PTFE, which meets Plaintiff's alleged definition of PFAS. *See* Ex. A, at 7; Compl. ¶ 3. The City of Norfolk's bid specifications conformed to and interpreted the federal government AFG Program specifications. Because of that, the City of Norfolk was eligible to receive and use AFG Program federal funding to purchase the built-to-order, federally-specified Globe turnout gear. To use the AFG Program federal funding to purchase firefighter protective clothing, the City of Norfolk was required to purchase firefighter protective clothing that complied with the federal specifications, including the use of PFAS-containing fabrics. Globe's turnout gear was not a standardized off-the-shelf product, but rather a built-to-order specialty product that complied with federal specifications. As a result, Plaintiff cannot rely (as she attempts) on case law holding that selling "standardized consumer product[s] to the federal government does not implicate the federal officer removal statute." ECF No. 38, at 9 (citing *Cnty. Bd. of Arlington Cnty., Va.*, 996 F.3d at 251.). Thus, by manufacturing built-to-order turnout gear for the City of Norfolk through the AFG Program,

10

which included the federal government's requirement that the turnout gear comply with NFPA-1971, among other conditions, Globe acted under the federal government's "subjection, guidance, or control." *See Watson*, 551 U.S. at 151.

### 2. Globe's Manufacture of Turnout Gear for the City of Norfolk Assisted and Helped Carry Out Duties or Tasks to Fulfill a Federal Government Need.

Second, the City of Norfolk commissioned Globe's built-to-order turnout gear, at least in part, to fulfill its contracts with the federal government. Thus, Globe's turnout gear assisted and helped carry out duties or tasks to fulfill a federal government need.

Pursuant to the Mutual Aid Agreement (between the City of Norfolk and the U.S. Navy) and the Hampton Roads Maritime Firefighting Contingency Plan (between the City of Norfolk and the U.S. Navy and U.S. Coast Guard), the City of Norfolk must provide firefighting services, including firefighting equipment, to fight fires on federal property. Under the Mutual Aid Agreement, the City of Norfolk provides firefighting services on federal property when required. *See* Norfolk, Va., Ordinance 28,751 (Jan. 25, 1977). Under the Hampton Roads Maritime Firefighting Contingency Plan, the City of Norfolk similarly works hand-in-hand with both the U.S. Coast Guard and the U.S. Navy to provide maritime firefighting services in the Port of Virginia area. *See* U.S. Coast Guard, Hampton Roads Maritime Firefighting Contingency Plan (August 2010). Both undertakings require the City of Norfolk to supply personnel and equipment—including turnout gear manufactured by Globe—for federal use. *Cf.* Norfolk, VA Resolution No. 1865 (June 14, 2022) (recognizing that federal government "lack[s] in-house equipment" and thus must rely on the City of Norfolk).

Plaintiff's reliance on *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 9970, 2021 U.S. Dist. LEXIS 68575 (S.D.N.Y. Apr. 8, 2021) is misplaced. *See* ECF No. 38, at 8. In that case, a negligence action brought by an 82-year-old woman who fell while trying to get out of

her bed at Bellevue Hospital Center, the Court rejected an argument by the New York City Health and Hospital Corporation that it was "acting under" a federal officer because it was following federal guidelines to help combat the Covid-19 pandemic, which it argued was a task of the federal government. Here, Globe is not arguing that it was acting under a federal officer because the federal government has an interest in fighting fires. Rather, Globe was acting under a federal officer because, insofar as Plaintiff argues the Decedent was injured as a result of wearing turnout gear that Globe had manufactured, that turnout gear was manufactured to conform to federal specifications, acquired by the City of Norfolk with federal funding and used, at least in part, to provide firefighting services to the federal government on federal property.

Plaintiff also cites *Troilo* for the proposition that "Defendants failed to satisfy § 1442(a)(1) jurisdiction because they 'do not allege that they themselves communicated or worked with federal agencies.'" This is similarly unavailing. ECF No. 38, at 10 (citing *Est. of Troilo by Troilo v. Rose Tree Place*, No. 22-cv-00097, 2023 WL 1864861 (E.D. Pa. Feb. 9, 2023), *aff'd*, No. 23-1435, 2024 WL 94098 (3d Cir. Jan. 9, 2024)). Unlike the Defendant in *Troilo*, Globe *can* demonstrate "something beyond regulation or compliance." *Troilo*, 2023 WL 1864861, at *6. The City of Norfolk's Mutual Aid Agreement with the U.S. Navy and the Hampton Roads Maritime Firefighting Contingency Plan both reflect precisely the type of "effort[s] to assist, or to help carry out, the duties or tasks of the federal superior" that nursing homes who followed guidance from the federal government during the pandemic, like the *Troilo* defendant, did not provide. *See Troilo*, 2023 WL 1864861, at *6.

Plaintiff's Motion implies that the City of Norfolk cannot have been providing firefighting services to the federal government because the AFG program pursuant to which it received funding for the turnout gear at issue is not available to "Fire Departments that are a

12

Federal Government entity" or fire departments that "are solely responsible" to fight fires on federal land. *See* ECF No. 38, at 8 n.5. But that is irrelevant. Globe is not arguing that the City of Norfolk was a "Federal Government entity" or that the City of Norfolk was solely responsible for fighting fires on federal property. The City of Norfolk agreed to provide firefighting services to the federal government above and beyond its obligations to the local community.

Finally, Plaintiff's argument that Globe "was manufacturing federally regulated products to the local Norfolk government for *local* use in the *municipality's* fire department," ignores the City of Norfolk's need for that turnout gear to fight fires on federal property, pursuant to the Mutual Aid Agreement and Hampton Roads Maritime Firefighting Contingency. *Id.* at 8. The City of Norfolk commissioned Globe's built-to-order turnout gear "to assist, or to help carry out, the duties or tasks of" responding to fires on federal property and for the support of the U.S. Navy and U.S. Coast Guard. *Watson*, 551 U.S. at 152.

Globe thus satisfies the first prong of the test for federal officer removal. *See Sawyer*, 860 F.3d at 254.

**B.      Globe Has a Colorable Federal Defense.**

Plaintiff does not dispute that Globe has a colorable federal defense. "Plaintiff agrees that the government contractor defense has been recognized as a colorable federal defense." *See* ECF No. 38, at 5.

The standard for a colorable federal defense, is a "low bar." *Express Scripts*, 996 F.3d at 255; *see also id.* at 254 ("Courts have imposed few limitations on what qualifies as a colorable federal defense. At its core, the defense prong requires that the defendant raise a claim that is 'defensive' and 'based in federal law.'"). Globe more than sufficiently pleaded a colorable federal government contractor defense under *Boyle v. United Technologies Corporation*, 487 U.S. 500, 512 (1988) in its Notice of Removal. *See* ECF No. 1, at ¶¶ 52-75. Because Plaintiff

13

does not dispute this prong of federal officer removal, Globe will not repeat its grounds for asserting a colorable federal defense here.

**C.      Globe Acted For and In Relation to Federal Authority When Providing Turnouts to the City of Norfolk.**

Finally, Globe's manufacture of built-to-order turnout gear for the City of Norfolk was carried out for and in relation to federal authority.  Plaintiff again mischaracterizes Globe's removal argument, asserting that the only connection pleaded by Globe between the act in question and an act taken under color of federal office is "that the turnout gear was purchased using federal funding." ECF No. 38, at 9.  Plaintiff asserts that none of her "claims are associated with or connected to any acts of the Defendant taken under federal authority." *Id.* at 10.  But this misstates the law.

The federal officer removal statute requires only that the act in question be "for or relating to" any act under color of federal office.  28 U.S.C. § 1442(a)(1).  Congress added the words "or relating to" in 2011.  *See* Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545.  The revised language broadened the availability of federal removal, such that there need only be "a connection or association between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (citation omitted).  There is no need to demonstrate "an airtight case on the merits" in order to satisfy that requirement.  *Id.*

Plaintiff's complaint alleges that Globe sold "PFAS-containing materials" in turnouts and that Decedent "wore turnouts in the usual and normal course of performing his firefighting duties and training and was repeatedly exposed to PFAS in his workplace" at the City of Norfolk fire department.  Compl. ¶¶ 1, 6, 8.  In his duties as a firefighter serving the City of Norfolk, Decedent necessarily could be called upon to provide firefighting services under the City of Norfolk's Mutual Aid Agreement with the U.S. Navy and the Hampton Roads Maritime Firefighting Contingency Plan with the U.S. Navy and U.S. Coast Guard.  Thus, in the ordinary

14

course of his employment, Decedent, upon information and belief, received training and was issued a set of turnout gear in preparation for that possibility. Whether Decedent did or did not actually fight a fire on federal property—which is not addressed in the complaint and is a factual question that Globe is entitled to have resolved in a federal forum—is immaterial for the purposes of federal officer removal. Plaintiff's allegations are rooted in Decedent's alleged general exposure to PFAS-containing materials in his set of turnout gear, not specific allegations about where or when he wore that turnout gear. *See id.* ¶ 8 ("Decedent Griffin wore turnouts in the usual and normal course of performing his firefighting duties and training and was repeatedly exposed to PFAS in his workplace."); *see also* ECF No. 38, at 6 n.4 (noting that Decedent's "turnouts contained PFAS chemicals, resulting in the long-term exposure to Decedent Griffin, which ultimately led to his death.").

As discussed in detail above, Globe provided turnout gear to the City of Norfolk "for or relating to" an act under color of federal office. Globe built-to-order the turnout gear for Decedent[7] in accordance with the City of Norfolk's request for PFAS-containing turnout gear to provide firefighting equipment and personnel to the federal government through its agreements with the U.S. Navy and U.S. Coast Guard. In requesting PFAS-containing Globe turnout gear that was compliant with NFPA 1971, the City of Norfolk interpreted and complied with federal specifications so that it would be eligible for the DHS/FEMA AFG Program federal funds to purchase turnout gear. In supplying this federally-funded, federally-specified built-to-order

---

[7] Globe reserves all rights to dispute Plaintiff's failure to identify the precise products and/or brands used by Decedent. Globe also reserves all rights to explore in discovery whether Decedent did, in fact, wear and use the Globe turnout gear that the City of Norfolk commissioned for Decedent. Furthermore, to the extent Plaintiff does not allege that Decedent was exposed to PFAS from turnout gear assembled by Globe, Globe should be dismissed from this action. Finally, Globe reserves all rights to argue spoliation if Decedent's turnout gear is unavailable or was destroyed.

15

turnout gear to the City of Norfolk to be worn by Decedent, at least in part, for the benefit of the federal government, Globe acted for and in relation to official federal authority. Globe thus satisfies the final prong of federal officer removal as well.

## CONCLUSION

For the foregoing reasons, Globe respectfully requests this Honorable Court deny Plaintiff's Motion to Remand. In the event Plaintiff's Motion is granted, the Court should not award attorney's fees. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). No unusual circumstances exist here and—as outlined above—Globe has an objectively reasonable basis for removal.

Dated: December 13, 2024

Respectfully submitted,
**GLOBE MANUFACTURING COMPANY, LLC**

By: */s/ Lynn K. Brugh, IV*____

Lynn K. Brugh, IV
Virginia State Bar No. 36778
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

George H. Bowles
Virginia State Bar No. 38574
WILLIAMS MULLEN
999 Waterside Drive, Suite 1700
Norfolk, VA 23510-3303
Telephone: (757) 622-3366
Facsimile: (757) 629-0660
gbowles@williamsmullen.com

16

John A. Irvin
Virginia State Bar No. 97044
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6140
Facsimile: (804) 420-6507
jirvin@williamsmullen.com

James L. Stengel (NY Bar ID 1800556)
Paige Pavone (NY Bar ID 5395041)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone: +1 212 506 5000
Facsimile:+1 212 506 5151
jstengel@orrick.com
ppavone@orrick.com

*Counsel for Defendant Globe Manufacturing
Company, LLC*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December 2024, I filed the Defendant's Opposition to Plaintiff's Motion for Remand using the Court's ECF System, which will serve a Notice of Electronic Filing (NEF) on all counsel of record.

By: _/s/ Lynn K. Brugh, IV_
Lynn K. Brugh, IV
Virginia State Bar No. 36778
WILLIAMS MULLEN
200 South 10th Street, Suite
1600 Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com